[Cite as *Levy v. Levy*, 2014-Ohio-2650.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100609**

---

## JONEE LEVY (N.K.A. FARRELL)

PLAINTIFF-APPELLANT

vs.

## GLENN D. LEVY

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-06-310638

**BEFORE:** Jones, J., Boyle, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 19, 2014

**ATTORNEY FOR APPELLANT**

Jack W. Abel
815 Superior Avenue
Suite 1915
Cleveland, Ohio 44114


**ATTORNEY FOR APPELLEE**

Megan J. Corsi
1370 Ontario Street
Suite 748
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Plaintiff-appellant Jonee Farrell appeals various post-divorce decree rulings. We affirm in part, reverse in part, and remand.

## I.  Procedural History

{¶2} Jonee and defendant-appellee Glenn Levy were married in 1977. Three children were born of the marriage; the children are now the age of majority. In 2006, Jonee filed for divorce; the divorce was finalized in August 2007. At the time of the divorce, Jonee was enrolled in a community college program to become a dental hygienist; when married she mostly stayed at home to care for their children. At the time of the divorce, Glenn was unemployed but was receiving severance payments through December 31, 2007, that would total $296,000.

{¶3} As part of the divorce settlement, Glenn agreed, in part, to: pay $4,000 per month in spousal support for 160 months, transfer various retirement accounts to Jonee, pay the mortgage on the marital home until it was sold, pay the lease payments and insurance on Jonee's car until lease expiration, and pay Jonee's tuition and fees at Cuyahoga Community College for the remaining two semesters. Glenn also agreed to make the payments on their children's student loans; Jonee would contribute to the loan payments once she was employed and her failure to do so could be considered by the court in any modification of spousal support.

{¶4} The divorce decree further provided that if Glenn was still unemployed on January 1, 2008, his spousal support payment would be reduced to $3,750 per month.

Glenn was again employed by January 1, 2008, so his spousal support obligation remained at $4,000 per month.

**{¶5}** In January 2010, Glenn reduced Jonee's monthly support payments to $2,000. According to Glenn, he sent Jonee a letter informing her that he was reducing her payments because he was paying for the children's college expenses and earning less money. Jonee did not challenge the reduction in monthly payments.

**{¶6}** In June 2012, Glenn filed a motion to modify spousal support, requesting a downward modification of spousal support to $2,000 per month. Jonee responded by filing motions to show cause, for imposition of wage order, to establish arrears, and for attorney fees. Glenn subsequently filed a motion asking the court to hold Jonee in contempt for failing to pay her portion of the children's student loans and for attorney fees.

**{¶7}** The trial court held a hearing on the motions in December 2012.

**{¶8}** The magistrate issued a decision in May 2013, in which it concluded that there had been a substantial decrease in Glenn's income and Jonee had failed to pay her share of the children's student loan payments. The magistrate reduced the spousal support to $1,375 per month and ordered the payments to continue until April 1, 2016. The magistrate further found that Glenn was $56,250 in arrears on his spousal support and ordered him to pay $275 per month toward the arrearage. The magistrate declined to hold either party in contempt or award attorney fees.

**{¶9}** Jonee filed initial and supplemental objections to the magistrate's decision. In October 2013, the trial court issued its judgment entry, overruling Jonee's objections

and adopting the magistrate's decision.

**{¶10}** Jonee filed a timely notice of appeal, and raises six assignments of error for our review.

## II. Assignments of Error

[I.] The trial court erred when it ordered the modification of spousal support to $1,375.00 per month when Appellee did not show a substantial change in circumstance that was not contemplated at the time of the agreement.

[II.] The trial court erred in not finding the Magistrate's modification of spousal support arbitrary and unreasonable.

[III.] The trial court erred in not finding the Magistrate's decision to award Appellant $1,375.00 per month as spousal support neither satisfies the express intent of the parties nor met the Appellant's needs.

[IV.] The trial court erred when it did not find the Appellee in Contempt of Court for his failure to pay spousal support as ordered.

[V.] The trial court erred and abused its discretion by denying Appellant's motion for Attorney Fees.

[VI.] The trial court erred when it determined that the Magistrate's recommendation that the arrearage ($56,250.00) be paid at the rate of $250.00[1] per month was not an abuse of discretion.

## III. Law and Analysis

**Standard of Review**

**{¶11}** A magistrate's decision on the issue of modification of spousal support is subject to a de novo review by the trial court. *Potter v. Potter*, 8th Dist. Cuyahoga No. 99247, 2013-Ohio-3531, ¶ 11; *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456,

---

[1]The magistrate's recommendation was $275 per month.

2011-Ohio-2255, ¶ 9. The trial court must conduct an independent analysis of the evidence in order to reach its own conclusions about the issues in the case and determine whether the magistrate properly determined the factual issues and appropriately applied the law. *Potter* at *id.*; Civ.R. 53(D)(4)(d). An appellate court's review is more limited, however, and a trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16.

**{¶12}** With respect to spousal support, a trial court has broad discretion in determining what is proper based upon the facts and circumstances of each case. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). As a reviewing court, we cannot substitute our judgment for that of the trial court absent an abuse of the trial court's discretion. *Id.* Furthermore, this court will not reverse a decision of the domestic relations court if there is competent, credible evidence in the record supporting the trial court's decision. *Abernethy v. Abernethy*, 8th Dist. Cuyahoga No. 92708, 2010-Ohio-435, ¶ 39.

**Spousal Support — Jurisdiction**

**{¶13}** In the first assignment of error, Jonee argues that the trial court did not have jurisdiction to modify the spousal support payments. We disagree.

**{¶14}** A trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly retained jurisdiction to make the modification and the court finds that (1) a substantial change in circumstances has occurred, and (2) the

change was not contemplated at the time of the original decree. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus; R.C. 3105.18(F).

{¶15} To "contemplate" means that a party had to "intend" that an event happened for it to preclude a modification of spousal support. *Javidan-Nejad v. Navadeh*, 8th Dist. Cuyahoga No. 97661, 2012-Ohio-3950, ¶ 20, citing *Kaput v. Kaput*, 8th Dist. Cuyahoga No. 94340, 2011-Ohio-10, ¶ 22. The test is not whether the event is foreseeable, but rather, whether the circumstance is one that "was thoroughly considered at the time of the divorce." *Id.*, citing *Palmieri v. Palmieri*, 10th Dist. Franklin No. 04AP-1305, 2005-Ohio-4064, ¶ 19. The movant bears the burden of proving that the parties did not contemplate the substantial change in circumstances at the time of the divorce. *Potter*, 8th Dist. Cuyahoga No. 99247, 2013-Ohio-3531, at ¶ 13, citing *Tremaine v. Tremaine*, 111 Ohio App.3d 703, 676 N.E.2d 1249 (2d Dist.1996).

{¶16} In this case, Jonee concedes that the parties' separation agreement and judgment entry of divorce expressly reserved the trial court's jurisdiction to modify the spousal support obligation. Jonee maintains, however, that because there was no substantial change in circumstances that occurred since the divorce that were not contemplated by the parties at the time of the divorce, the trial court lacked jurisdiction to modify the spousal support.

{¶17} The magistrate found that the court retained its jurisdiction because jurisdiction to modify spousal support had been expressly reserved in the separation

agreement and divorce decree. The trial court additionally found that Glenn's substantial decrease in salary was not contemplated at the time of the award and constituted a substantial change in circumstances. We agree with the trial court's assessment; therefore, we find that the court retained jurisdiction.

{¶18} Accordingly, the first assignment of error is overruled.

**Spousal Support — Modification**

{¶19} In the second and third assignments of error, Jonee challenges the trial court's modification of spousal support from $4,000 to $1,375 per month.

{¶20} R.C. 3105.18(C)(1) sets forth the factors a trial court must consider when determining whether an existing support order should be modified in light of a significant change in circumstances. *Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, at ¶ 31. R.C. 3105.18(C)(1) provides:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and

equitable.

**{¶21}** A trial court is not required to comment on each statutory factor; rather, the record must only show that the court considered the statutory factors when making its award. *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, ¶ 17, citing *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093 (12th Dist.1996).

**{¶22}** In this case, the magistrate indicated it was making the following findings pursuant to R.C. 3105.18 that warranted a change in spousal support:   Glenn's income

had decreased from $250,000[2] to $178,000 while Jonee's income had increased from $0 to $45,000; Jonee's earning ability had increased substantially and she now had a community college background; Jonee had more retirement assets than Glenn; the parties had no minor children; Glenn had assumed liability for Jonee's portion of the children's student loans; Glenn paid for Jonee's education; the parties enjoyed a comfortable standard of living during their 30 years of marriage; and Jonee had finished her education.

{¶23} The magistrate calculated the new amount of spousal support as follows. The magistrate noted that when spousal support was awarded in the divorce, Glenn's annual income was $290,000 and Jonee's was $0. At that time, Glenn was responsible for 100% of Jonee's $4,000 monthly household allowance. Since Jonee was now earning $45,000 a year as a dental hygienist, she would net approximately $2,625 a month (reduced by a 30% allowance for deductions). Therefore, the magistrate calculated, Glenn should pay support in the amount of $1,375 per month to bring Jonee back to a $4,000 monthly household allowance.[3]

{¶24} According to the testimony at the hearing, Glenn was 59 years old and in good health. In 2010, he decided to reduce his spousal support payments from $4,000 to $2,000 per month because he was earning less money and was paying for the children's

---

[2] It is unclear whether the $250,000 amount is a clerical error or if the magistrate used a different calculation to come to this amount, as opposed to the $290,000 amount previously stated.

[3] The magistrate indicated that it was modifying the monthly spousal support payments to $1,375 to keep "Jonee's household allowance at $4,000 a month." We question, however, the magistrate's method of calculating that amount, given the change in circumstances Jonee testified to at trial.

college expenses.[4]   Glenn testified that when he did not hear from Jonee regarding his new payment arrangement, that he thought "she agreed because she did not disagree with me" and he "assumed that she accepted those terms."   According to Glenn, he did not find out until approximately 18 months later, through a letter from Jonee's attorney, that she was seeking arrears and reinstatement of the $4,000 payments.

{¶25} Glenn testified that he earned $247,748 in 2009, $68,449 in 2010, $178,051 in 2011, and would earn approximately $178,000 plus a 3 percent cost of living increase ($184,340) in 2012.   Conversely, Jonee testified she earned $27,771 in 2009, $38,478 in 2010, $43,494 in 2011, and would earn $45,000 in 2012.   Glenn testified to monthly expenses of $8,240, which included $864 a month in payments on the children's student loans; Jonee stated her monthly budget was    $5,923.

{¶26} At the time of the hearing Jonee was 57 years old and in good physical and mental health.   She testified she was earning the most she could hope to make as a dental hygienist and had to work more than one job in order to work 40 hours a week.   Jonee explained it was common for those in her profession to work for more than one dentist to make ends meet because a full-time job with benefits was "impossible" to find.

{¶27} Jonee also testified that she now rented an apartment and would probably not own a home again "for a very long time," could not afford to travel or take vacation time,

---

[4]According to the divorce decree, Jonee was responsible for paying an amount equal to dividing her annual income by the sum of her income plus Glenn's income.   For illustrative purposes only, in 2012, her monthly obligation would equal approximately 19.6%, or $170 per month, that Jonee was responsible for paying on the children's student loans.

could no longer afford to save for retirement, and did not think she would be able to afford to retire. Jonee opined that her standard of living had decreased since the divorce and she was living "paycheck to paycheck."

{¶28} According to her testimony, Jonee did not agree to the 50 percent reduction in spousal support in January 2010, but did not file anything with the court because Glenn had lost his job and she felt sorry for him and wanted to give him time to "get back on his feet." She further testified she did not pay her portion of the children's student loans because she never received a statement from Glenn stating what she owed.

{¶29} In light of the above considerations and testimony, we find that the trial court abused its discretion in reducing Jonee's spousal support payments to $1,375 per month. Although Glenn may have believed that Jonee agreed to the reduction in spousal support payments in lieu of her making payments on the children's student loans, his testimony was that he "assumed" she agreed to the arrangement because he did not hear anything to the contrary. But Jonee testified that she never agreed to the reduction in spousal support. In addition, the trial court reduced the payments $625 per month lower than Glenn had even asked they be lowered: Glenn motioned the court to reduce his monthly payments from $4,000 to $2,000 per month but court decided to reduce the payments even further, making his monthly obligation only $1,375.

{¶30} Moreover, Jonee is still responsible for payments on the children's student loans. Although Glenn testified he reduced her spousal support payments in lieu of her paying on the student loans, the trial court's October 2013 judgment was silent on the

issue.[5]   As such, Jonee remains responsible for monthly payments based on the formula set forth in the divorce decree.

{¶31} We do recognize, however, that a modification of spousal support payments from the original $4,000 a month is warranted.   Jonee requested the spousal support be reduced no lower than $3,750 per month, the lowest amount, she argues, that the parties agreed to under the divorce decree.   Although we do not agree with Jonee that the parties agreed to a minimum spousal support amount, we find that $3,750 per month is equitable and supported by the record.

{¶32} In accordance with R.C. 3105.18, we note the following since the divorce: in 2012 Glenn was still on track to earn approximately $130,000 more than Jonee; while Jonee's education and earning ability increased, she had reached her full income potential; both parties were without credit card debt and paid their monthly bills on time, but Jonee was living paycheck to paycheck; there were no minor children, although one of the adult children lived with Jonee and did not pay rent; Glenn voluntarily assumed liability for Jonee's portion of the children's student loans for a period of over two years; Glenn testified that Jonee had more retirement assets but Jonee testified that she was currently unable to save for retirement; and the parties enjoyed a comfortable standard of living during their 30 years of marriage.

---

[5] We note that Glenn asked the trial court to hold Jonee in contempt for failing to make the monthly student loan payments; the court denied his motion.   Glenn did not move, nor did the court order, Jonee to reimburse Glenn for her portion of the children's student loan payments he alleged he made in lieu of spousal support payments.

**{¶33}** We further find these additional factors pursuant to R.C. 3105.18(l) and (n): Glenn was the primary income earner throughout the marriage, while Jonee mostly stayed at home to raise the children;  Glenn can deduct the spousal support payments for tax purposes, but the support is taxable income for Jonee; and the spousal support payments have a definite end date.

**{¶34}** In light of the above, we modify the monthly spousal support payments from $1,375 to $3,750 a month.   We remand the case for the trial court to correct its judgment entry to that effect.

**{¶35}** The second and third assignments of error are sustained in part.

**Contempt**

**{¶36}** In the fourth assignment of error, Jonee argues that the trial court erred when it did not find Glenn in contempt of court.

**{¶37}** Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority.   *Kapadia*, 8th Dist. Cuyahoga No. 96910, 2012-Ohio-808, at ¶ 26,   citing *State v. Flinn*, 7 Ohio App.3d 294, 455 N.E.2d 691 (9th Dist.1982).   R.C. 2705.02 provides that disobedience of a lawful order of the court may be punished as contempt.   A failure to pay court-ordered spousal support is a civil contempt.   *See* R.C. 3105.18(G); *Szymczak v. Szymczak,* 136 Ohio App.3d 706, 713, 737 N.E.2d 980 (8th Dist.2000).

**{¶38}** We review a trial court's decision on contempt under an abuse of discretion standard.   *Kapadia* at ¶ 22, citing *In re Contempt of Modic*, 8th Dist. Cuyahoga No.

96598, 2011-Ohio-5396, ¶ 7.

{¶39} Jonee relies on *Lemke v. Lemke*, 8th Dist. Cuyahoga No. 94557, 2011-Ohio-457, in support of her argument that Glenn should have been held in contempt. In *Lemke*, this court upheld a contempt finding when the appellant made only partial spousal support payments. This court determined that the appellant's partial payments of $43,500, instead of the required $90,000, were not sufficient to prevent him from being found in contempt. *Id.* at ¶ 43.

{¶40} In this case, the magistrate found that Glenn was in "substantial compliance" with his spousal support obligation and had made a "good faith effort to pay spousal support by paying half of the obligation." The magistrate noted that Glenn's income was "drastically" reduced and there was conflicting testimony as to whether Jonee consented to the reduced payments in consideration for Glenn taking full responsibility for her share of the student loan payments. The trial court agreed, declining to find Glenn in contempt and finding that he "substantially complied with his duty to pay spousal support," "made a good faith effort," to pay spousal support and "consistently paid monies toward spousal support every month."

{¶41} We disagree that Glenn's unilateral decision to cut Jonee's spousal support payments by 50 percent equates with a good faith effort to comply with the divorce decree or is substantial compliance with said decree. Moreover, our review of the testimony at the hearing shows no conflicting testimony. Glenn testified that he "assumed" that Jonee did not have a problem with receiving only $2,000 a month in spousal support because he

did not hear from her after he sent her a letter explaining the reduction in payments and that she "agreed" to the reduction because "she did not disagree." But Jonee testified that she did not consent to the reduction in payments. Both parties testified that they did not communicate with each other after the divorce.

**{¶42}** That we disagree with the trial court's assessment that Glenn was in substantial compliance with his spousal support obligation, however, does not mean that we find that the trial court abused its discretion in declining to find Glenn in contempt. In the domestic relations arena, judges are generally given broad discretion in the fashioning of equitable relief under the specific facts and circumstances of each case. *Lemke* at ¶ 24. With this in mind, although we may disagree with the trial court's rationale, we decline to find that it abused its discretion when it refused to hold Glenn in contempt.

**{¶43}** Therefore, the fourth assignment of error is overruled.

**Attorney Fees**

**{¶44}** In the fifth assignment of error, Jonee claims that the trial court abused its discretion in denying her motion for attorney fees.

**{¶45}** R.C. 3105.73 provides for attorney fees for post-decree proceedings:

(B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶46} This court applies an abuse of discretion standard of review on the domestic relations court's decision to grant attorney fees. *Dureiko v. Dureiko*, 8th Dist. Cuyahoga No. 94393, 2010-Ohio-5599, ¶ 26.

{¶47} The magistrate noted that both parties sought an award of attorney fees based upon their respective allegations that the other was in contempt of court orders. The magistrate found neither party in contempt and concluded that each party should pay his or her own attorney fees and the trial court agreed.

{¶48} Although R.C. 3105.73(B) allows for the trial court to award attorney fees on post-decree proceedings, we decline to find that the court abused its discretion by ordering the parties to pay their own attorney fees. Neither party is without fault in this case – in simple terms, Glenn failed to pay his spousal support obligation in full but Jonee failed to pay her portion of the student loan debt. Each party was required to expend monies to pursue enforcement of the divorce decree.

{¶49} In light of the above, the fifth assignment of error is overruled.

**Arrearages**

{¶50} In the sixth assignment of error, Jonee contends that the trial court abused its discretion when it ordered Glenn to pay the $56,250 owed in spousal support arrears in monthly increments of $275.

{¶51} R.C. 3123.21 provides as follows:

(A) A withholding or deduction notice described in section 3121.03 of the Revised Code or an order to collect current support due under a support order and any arrearage owed by the obligor under a support order pertaining

to the same child or spouse shall be rebuttably presumed to provide that the arrearage amount collected with each payment of current support equal at least twenty per cent of the current support payment.

(B) A court or administrative hearing officer may consider evidence of household expenditures, income variables, extraordinary health care issues, and other reasons for a deviation from the twenty per cent presumption.

**{¶52}** In this case, the trial court ordered Glenn to pay an additional $275 a month toward his existing arrearage. Jonee alleges that the arrearage accumulated over only a two and one-half year time period but the trial court granted Glenn more than 17 years to repay the arrearage. Due to Glenn's age and the income disparity between the parties, Jonee argues that time frame in which Glenn has to repay his debt is excessive and constitutes an abuse of discretion.

**{¶53}** But because we modified the spousal support payments to $3,750 per month, a monthly payment of $275 would no longer conform with R.C. 3121.21. Therefore, we modify the arrearage payments to conform with the statute. Accordingly, the monthly arrearage payments are modified to twenty percent of $3,750, or $750 a month. The case is remanded for correction of the journal entry to reflect that Glenn is required to pay an additional $750 per month toward his existing arrearage.

**{¶54}** The sixth assignment of error is sustained in part.

**Remand Instructions**

**{¶55}** In conclusion, we find that the trial court erred when it reduced the monthly spousal support payments from $4,000 a month to $1,375 a month; accordingly, the monthly spousal support payment amount is modified to $3,750 a month. The date the

spousal support payments end, April 1, 2016, and the other conditions set forth by the trial court in its October 2013 order with regard to the spousal support payments remain the same. We further modify the monthly arrearage payments to $750 per month until the debt is paid in full. The case is remanded for correction of the judgment entry to reflect these modifications.

{¶56} Accordingly, the judgment is affirmed in part, reversed in part, and the case is remanded.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, A.J., and
MARY EILEEN KILBANE, J., CONCUR